Davis,¡J.
In the court below, appellee recovered judgment against appellant in the sum of two thousand dollars, for damages on account of personal injuries sustained by him.
The first and second paragraphs of the amended com-plaint on which the trial was had, omitting the caption, are in the words and figures following, to wit:
“James H. Persons, the plaintiff above named, for amended complaint, complains of the defendant, the Linton Coal and Mining Company, and for cause of complaint says that at the time of the injuries hereinafter complained of, the defendant was a corporation duly organized under the laws of the State of Indiana, and owned a coal mine near the town of Linton, in said Greene county, known as the ‘Buckeye Mine,’ in which mine the said defendant was then engaged in the business of mining coal under the laws of said State of Indiana, and at all times, when so operating said mine, employed more than ten men therein; that said coal mine has a main shaft one hundred feet deep, from which one entry, and only one, leads out through the coal stratum, to and connecting with the rooms and working places of the miners and laborers in said mine; that the coal stratum in said mine,including that originally in said entry leading out from said main shaft, is six feet in thickness, and is all, including said entry, overlaid with strata of hard substances known as slate, rock, shale and other substances, which make and form what is known as the roof thereof; that the coal had then long since been mined from said entry, and the same was then, and for a long time prior thereto had been, used by the defendant, when operating said mine, as the passway, and only passway, for miners and laborers in said mine to pass to and from their work in said mine, and was also used by the defendant as the passway, and only passway through *267 which, to transmit the mined coal from the working places in said mine to said main shaft, and was the only passway in said mine for such transportation, and was the only passway in said mine-through which miners and laborers could pass in going to and from their working places in said mine, and was the only passway used for that purpose in said mine; that unless all said slate and other substance forming the roof of said passway is, and was, well and carefully secured, it is, and was, liable at all times, without warning, to fall upon miners and laborers when going to and from their work in said mine, in sufficient quantities to bruise, wound and kill them; that defendant then had in its employ in said mine a mining boss named James Pascoe; that it was the duty of said mining boss, and said defendant, to see that all loose coal, slate and rock overhead wherein miners had to travel to and from their work in said mine, including the passway aforesaid, were carefully secured; that at the time of the injuries hereinafter complained of, and for three months prior thereto, the slate, rock and other substance forming the roof of said passway was cracked, loose and in a dangerous condition, and liable at any time, without warning, to fall upon laborers and miners passing thereunder to and from their work in said mine, in sufficient quantities to bruise, wound and kill them, of all of which facts the defendant had full knowledge; that said mine boss and said defendants, nor either of them, did not, prior to the date of the injuries hereinafter complained of, see that all loose coal, rock, slate and other substance overhead and forming the roof in said mine wherein miners working in said mine had to travel to and from their work therein, including said passway, were carefully secured, and safety in said mine was in all respects assured, but negligently, willfully and unlawfully failed and refused to carefully secure *268 the same against falling on the miners and laborers while going to and from their work in said mine, either by properly propping said roof or removing therefrom said loose slate, or in any other way, and negligently, willfully and unlawfully permitted the roof of said passway, and tlie slate, rock and other substance thereof, to remain unsecured, and in a dangerous condition for miners in passing thereunder to and from their work, and negligently, willfully and unlawfully failed and refused to order and direct that no person, including this plaintiff, be permitted in said unsafe place, unless for the purpose of making it safe, or to pass therethrough, but, on the contrary, negligently and willfully permittéd this plaintiff and other of its employes to repeatedly pass through and be in said unsafe place.
"Plaintiff says that on the 26th day of January, 1892, he was in the employ of this defendant as a miner in said mine, for wages, and that on said day of January, while on his way from his work in said mine, by way of said passway (which was the only passway for plaintiff and other miners to go to and from their work in said mine), and while necessarily in said passway on his way from work to which he had been assigned by defendant as one of defendant’s employes in said mine, and without any knowledge that the slate, rock and other substance forming the roof of said passway were cracked, loose or in a dangerous condition, and while in the exercise of due care, and without any fault upon his part, and without any warning to him, and being negligently and willfully permitted by defendant to pass through said unsafe passway and under said dangerous slate from his said work in said mine, by reason of the slate, rock and other substance forming the roof of said passway then being cracked and loose, and by reason of the same not having been carefully secured, or removed, or otherwise *269 made safe by said mine boss and said defendants, and by reason of said mine boss or defendant not having ordered and directed that no person be permitted in said unsafe place unless for the purpose of making it safe, as aforesaid, and by reason of this plaintiff being permitted to be therein, as aforesaid, a large piece of slate fell from the roof of said passway upon the plaintiff, striking him on his head and on his back, near his hips, causing a severe contusion of the muscles in those parts, also a severe sprain of the posterior lumbo sacrel vertebra, of the posterior illio sacrel vertebra, of the illio femoral vertebra, and permanent injury to the articulation of all of same, severely bruised his back at the injured point .aforesaid, and cut large and ugly wounds in ,his scalp, all of which has resulted in his permanent injury in those parts and in his permanent disability to work and earn wages as a coal miner or at any other manual labor; that irom said injuries he has suffered great and lasting pain of body and worry of mind, has incurred a doctor bill of $100, had to be nursed at his home two months,, has lost ten months’time from his work; that he has been a coal miner for twelve years last past, and has no other profession or vocation; that he is now thirty-four years of age, has a wife, and one child four years of age; that the ■only source of support for himself and wife and child is, and was, through his earnings as a coal miner; that prior to his said injuries he had been free of sickness all his life, had a good constitution, good health, was industrious, and able to earn, and did earn, wages as a coal miner in the sum of $60 per month; that by reason of all the facts in the premises he has been damaged in the sum of ten thousand dollars, for which sum he demands judgment, and for all other proper relief.
Paragraph 2.
“The plaintiff, for a second and further paragraph of *270 amended complaint, says that at the time of the injuries hereinafter complained of, the defendant was a corporation duly organized under the laws of the State of Indiana, owned a coal mine near the town of Linton, in said Greene county, Indiana, known as the ‘Buckeye Mine,' was then engaged in the business of mining coal from the mine under the laws of said State of Indiana; that said coal mine has a main shaft one hundred feet deep, from which one entry, and only one, leads out through, the coal stratum, to and connecting with the rooms and working places of the miners and laborers in said mine; that the coal stratum in said mine, including that originally in said entry leading out from said main shaft, is six feet in thickness, and is all, including said entry, overlaid with a strata of hard substance known as slate, which forms what is known as the roof thereof; that the coal had long since been mined from said entry, and the same was then the only road and route in said mine over which the defendant could and did transport its mined coal from the working places therein to said main shaft, and then was the only passway through which the miners employed by defendant in said mine could and did pass in going to and from their work in said mine; that said slate forming the roof of said passway, unless safely secured by props or other means, was then, and at all times, liable to become loose and fall upon and injure miners and laborers passing thereunder in going to and from their work in said mine, which fact was then well known to this defendant; that at the time of the injuries hereinafter complained of, and continuously for three months prior thereto, the said slate forming the roof of said passway was loose, cracked and insufficiently secured by props and other means, which fact was then well known to this defendant, and was unknown to the plaintiff, and which fact rendered the same dangerous to *271 miners and laborers passing thereunder to and from their work in said mine, which fact was likewise known to this defendant at that time, and said defendant, with full knowledge of all said facts, carelessly and negligently suffered and permitted said slate forming the roof of said passway to remain cracked, loose, insufficiently secured and dangerous to its employes in said mine, including this plaintiff, by then and there carelessly and negligently failing and omitting to secure the same by props, caps and timbers suitable for that purpose, or by taking down and removing the same, or to make the same safe in any other manner, and that while the same was in the dangerous condition aforesaid, this defendant carelessly and negligently directed and permitted its employes in said mine to pass thereunder, including this plaintiff, in going to and from their work therein; that on the 26th day of January, 1892, the plaintiff was in the employ of this defendant as a miner in said mine for wages, and, on said day in January, as such employe, while necessarily in said passway on his way from his work in said mine, without any knowledge of the slate forming the roof of said passway being then loose, cracked, insufficiently secured and dangerous to persons passing thereunder, while in the exercise of due care and without any fault upon his part, and without any warning to him, but by reason of the slate roof of said pass-way being then cracked, loose and insufficiently secured, and by reason of the defendant carelessly and negligently suffering and permitting the same to then be and remain loose, cracked and insufficiently secured, a large piece of loose slate fell from the roof of said passway upon the plaintiff, striking him on his head and on his back near his hips, causing a severe contusion of the muscles in those parts, also a severe sprain of the posterior lurnbo sacrel, of the posterior illio sacrel, of the *272 illio femoral, and permanent injury to the articulation of all of same, severely bruised his back at the injured point aforesaid, cut large and ugly wounds in his scalp, all of which has resulted in his permanent injury in those parts, and in his permanent disability to work and earn wages as a coal miner, or at any other manual labor; that from said injuries he has suffered great and lasting pain of body and worry of mind, has incurred a doctor’s bill of $100, had to be nursed at his home two months, and has lost ten months of time from his work; that he has been a coal miner for twelve years last past, and has no other profession or vocation;- that he is now thirty-four years of age; that his only source of support for himself and family is and was through his earnings as a coal miner; that prior to his said injuries he had been free from sickness all his life, had a good constitution, good health, was industrious and able to earn, and did earn, wages as a coal miner in the sum of $60 per month; that by reason of all the facts in the premises, he has been damaged in the sum of $10,000, for which sum he demands judgment and all other relief.”
The first error discussed is that the court erred in overruling appellant’s demurrer to the first paragraph of the amended complaint.
The. contention is that said paragraph shows affirmatively contributory negligence on the part of appellee.
It is averred in substance that at the time of appellee’s injuries, and for three months prior thereto, the slate, rock and other substances forming the roof of said pass-way was cracked, loose, and in a dangerous condition, and liable at any time without warning to fall upon laborers and miners passing thereunder to and from their work in said mine, all of which facts the appellant had full knowledge, and that appellee without any knowledge that the slate, rock, and other substances forming *273 the roof of said passway were cracked, loose, or in. a dangerous condition, and while in the exercise of due care, and without any fault upon his part, and without any warning to him, was injured by a large piece of slate falling from the roof of said passway upon him. In the face of the averments that appellee had no knowledge of the condition of the roof, and that he was without fault, the court can not say on the specific facts stated that he knew, or by the exercise of ordinary care might have known, the alleged unsafe and dangerous condition of the mine roof.
It does not appear that the dangerous condition of the roof was open and obvious. The appellant was bound to make reasonable inspection to discover latent defects and danger, but this duty did not rest on appellee. Pittsburgh, etc., R. W. Co. v. Woodward, 9 Ind. App. 169.
He was only bound to observe defects that were visible -and apparent. Although the master and servant may have the same opportunities for acquiring knowledge of defects they are not upon an equality as to the acts necessary to constitute diligence. This question is fully discussed, and the authorities collected by Judge Gavin, in the opinion last above cited. Chicago, etc., R. R. Co. v. Branyan, Admr., 10 Ind. App. 570.
It is next insisted that the negligence averred in the first paragraph of the complaint was the negligence of the mine boss, James Pascoe, and that he was the fellow-servant of the coal miner. The duties of the mining boss are prescribed by section 12 of the act of March 2, 1891; section 7472, R. S. 1894. In the next section it is provided that the owner of the mine shall be liable for any injury to person or property occasioned by any violation of the provisions of the act. Section 7473, R. *274 S. 1894. The first paragraph of the complaint is predicated upon the alleged negligence of the appellant, on account of the failure of the mining boss to perform the duties and take the precaution prescribed by section 7472, supra. The mining boss, under the allegation of the complaint, did not stand in the relation of a fellow-servant of appellee. Brazil Block Coal Co. v. Young, 117 Ind. 520.
The rule is well settled that the employer must use ordinary care and reasonable skill to make safe the place where he requires his employes to work.
This duty the employer can not delegate so as to escape liability. No matter by whom the duty is performed, the employer is responsible if it is negligently performed, and from that negligence injury results. The statute cited was not intended to relieve the employer of this responsibility. The purpose was to provide an additional safeguard against injury to employes in mines by requiring the operator of the mine, through the mining boss, to give special attention to the safety of the mine as a working place. It was not intended to absolve the owner or operator from liability when he employed a competent mining boss and delegated the duty to him of making safe the place where he required his employes to work. Section 13 of the act expressly provides that for any violation of the act the owner, operator, agent or lessee shall be liable to any person who is injured thereby. The violation (loes not refer alone to the failure to employ such mining boss, but it refers also to the failure to perform the duties specifically mentioned in section 12. Hochstettler v. Mosier Coal and Min. Co., 8 Ind. App. 442.
It is urged that the second paragraph of the complaint is bad because it affirmatively shows contributory negligence on the part of the appellee, and for the further *275 reason that it does not allege that the appellant did not exercise due care in the employment of its mine boss or that its mine boss was incompetent, and that appellant retained him in its service after notice of his incompetency. The position of counsel for appellant is that the mine owner or operator is not responsible for the negligence of the mine boss if he, the mine owner or operator, has exercised due care in the employment of a competent mine boss, or has not retained in his employ an incompetent mine boss after notice of his incompetency.
On this theory, as we understand it, if the owner, operator, agent or lessee should omit to take the precaution prescribed in section 12, his liability for injuries sustained by an employe, in the event no mine boss had been employed, would depend solely on the fact that he had failed to provide such mine boss, and not on the unsafe and dangerous condition of the mine, growing out of the failure to take the precautions and perform the duties prescribed by said section. On the other hand, if he employed a competent mine boss, such employment would entirely relieve the master of responsibility for injuries sustained by the employe in such cases, notwithstanding the duties and precautions prescribed in section 12, should have been wholly disregarded. In other words, the effect of the contention is that the employment of a competent mine boss is the full measure of the duty of the owner or operator of the mine in such cases.
In the second paragraph of the complaint the mine boss is not mentioned, but the negligence alleged therein is the same in substance and effect as that averred in the first paragraph. What we have heretofore said in the consideration of the first paragraph is a sufficient answer to the argument of counsel in relation to the second paragraph. The gist of the action is not the failure to employ a competent mine boss, but grows out of the failure *276 of the employer to discharge the duties resting on him in relation to providing a safe working place for appellee. This duty appellant could not, in our opinion, by virtue of the provisions of the statute, delegate to the mine boss so as to escape liability on account of the failure to perform the acts therein required. The statute prescribes the care which the employer is required to exercise. The employment of a competent mine boss is not the exercise of the care. The failure of the boss to perform the duties designated in the statute is, under the statute, the negligence of the master. Aside from the statute, each paragraph of the complaint states a good cause of action. In other words the statute was not intended to lessen the duties of the master, but was intended to increase his duty to the extent of requiring him to employ a mining boss to give special attention to the condition of the mine. It was not contemplated, however, when the mining boss was employed that such employment should relieve or exempt the master from liability.
There was no error in overruling the demurrer to each paragraph of the complaint.
The next error discussed is that the court erred in refusing to give the third instruction asked by appellant, as asked, and in giving the said instruction as modified by the court. The instruction, as asked by appellant, reads as follows:
“3. The court instructs the jury that the plaintiff must prove by a preponderance of the evidence, that the defendant knew that the north entry, where it is alleged the injury to the plaintiff occurred, was in an unsafe and dangerous condition, and the plaintiff must also further prove, by a like preponderance of the evidence, that he, the plaintiff, did not know at the time the injury occurred, that said north entry was in an unsafe and dangerous condition.”
*277 This the court refused to give, as asked, and on its own motion modified the same, and gave the following modified instruction, viz.:
“The court instructs the jury that the plaintiff must prove, by a preponderance of the evidence, that the defendant knew, or by the exercise of ordinary care might have known, that the north entry, where it is alleged the injury to the plaintiff occurred, was in an unsafe and dangerous condition, and the plaintiff must also further prove by a like preponderance of the evidence that he, the plaintiff, did not know, at the time the injury occurred, that said north entry was in an unsafe and dangerous condition.”
There was no error in this ruling of the court. It is a familiar rule that where one ought, by the exercise of reasonable diligence, to have discovered the existence of a certain defect, he is held to have knowledge thereof. Lake Erie, etc., R. R. Co. v. McHenry, 10 Ind. App. 525.
If appellant desired to have the jury instructed that if appellee might have known of the danger by the exercise of ordinary care he could not recover, it should have asked the court to give such an instruction. In the next following instruction the court, at the request of appellant, said to the jury that if appellee “knew, or had reasonable cause to know, that the said entry was in an unsafe and dangerous condition he can not recover in this action.”
When these instructions are considered in connection with the other instructions given on the question, the assumption of the risk and the question of contributory negligence, appellant, on the point now under consideration, has no just cause of complaint.
It is next insisted that the court erred in refusing to give the eighth instruction asked by appellant, directing a verdict for appellant.
*278 There is evidence in the record tending to prove that the slate known as the second layer or second draw slate in the roof of the mine at the point where appellee was injured became and was loose and liable to fall, and therefore dangerous, at and for sometime before appellee was injured by the same falling on him; that the former mine boss had actually discovered this dangerous condition and communicated the fact to the officers of appellant; that the defects and dangers mentioned were not open and obvious, but that they were latent, and were such as could have been readily discovered by reasonable inspection and examination; that such defects were unknown to' appellee, but that appellant knew, or, by the exercise of ordinary care, might have known of the unsafe and dangerous condition long before the accident, and might have repaired or removed the defects and dangers.
It is not necessary to set out the evidence, but suffice it to say that we have carefully read the entire record and are convinced that there was no error in refusing to instruct the jury to return a verdict for appellant.
The next error discussed arises on giving the following instruction:
“If you find, from the evidence, such facts in this case as entitled the plaintiff to recover of the defendant damages for any injury you may find plaintiff has suffered by reason of any wrong charged against defendant in this action, then, in assessing such damages, you may take into consideration any suffering, pain, expense of physician, liability for nursing services, loss of time, loss of ability to earn money in his personal avocation at the time of the injury, and permanent derangement or impairment of plaintiff physically, that you may find from the evidence he has suffered or incurred. And in such case, if you find the plaintiff entitled to damages *279 under the above rule, the further fact, if you, from the evidence, find that it is the fact, that after such injury plaintiff was able to occupy, and did occupy, a situation not requiring physical exertion to any material extent, and to earn compensation, then it will not defeat his right to recover damages for any impairment of ability to earn wages at his said usual employment that he might otherwise be entitled to.”
It was not error to instruct the jury to take into consideration any loss of ability to earn money in his personal vocation on account of the injury. The court should, if asked, have instructed the jury that they might also take into consideration appellee’s ability to earn money in any other business or occupation than that of a coal miner.
In other words, in assessing damages, it was proper for the jury to take into consideration, with the other elements of damages in the case, any loss in the past or probable loss in the future of time or ability to earn money, by appellee, in his usual vocation, in connection with the fact as to whether he had secured, or was likely to secure, by reasonable exertion, other suitable employment, together with the compensation received by him therefor, or which he might have received, or that he may receive.
The only serious question on this branch of the case is whether the concluding part of the instruction cor-rectly states the law applicable to the evidence. It appears that during the year preceding his injury appellee earned as a coal miner on the average of $38.50 per month. Within three months after his injury he was employed as check weighman in the mine, and was so employed at the time of the trial, and as such check weighman he earned $40 per month.
Prior to the injury appellee was a strong, vigorous and *280 healthy man. He was about thirty-four years of age at the time he was injured. There is evidence fairly tending to prove that he was severely injured; that his physical strength and powers of endurance have been in some material respects permanently weakened, and his capacity to pursue his usual vocation impaired. He recovered verdict and judgment for two thousand dollars. The position as weighman did not require much physical exertion. In estimating his damages on account of the impairment to earn wages at his usual employment it was proper, as we have before observed, to take into consideration what compensation he could earn in other situations. The fact, however, that at the time of the trial and prior thereto, after his injury, he did occupy a situation not requiring physical exertion to any material extent and earned compensation therein equal to or greater than his wages as a miner, was not sufficient to defeat his right to recover damages for the impairment, by reason of his injury, of his ability to earn wages at his usual employment. It may be conceded that appellee was not entitled to recover any damages on account of the impairment of his ability to earn wages at his usual employment during the time he earned compensation equal to such wages in some other employment, but he was entitled to recover for such probable loss, on account of such impairment of his ability, as he was likely to sustain in the future, as hereinbefore indicated.
If he did not have such other employment all the time, and was not by reasonable exertion able to secure other employment suitable to his condition, he was entitled to recover damages for the time he could not secure such employment or perform such duties equal to such wages as it was probable he might have been able to earn at his usual employment if he had not been injured, or if he was able only to secure such other suitable employ *281 ment at reduced wages, he was then only entitled to recover on this item the excess it was probable he might have been able to earn at his usual employment during such term. It was • not necessary that all the different phases of the question should have been embodied in this instruction.
If the jury were likely to understand from the instruction that they might allow appellee compensation for the impairment of his ability to earn wages at his usual vocation during such time as he received or was able to receive equal or greater compensation for other reasonable work which he performed, or might have performed, then it was calculated to confuse and mislead the jury, and was. therefore erroneous.
The instruction is awkwardly, and, perhaps, was hurriedly written. Its meaning is not clear. The language is, if you find “that after such injury plaintiff was able to occupy, and did occupy, a situation not requiring physical exertion to any material extent, and to earn compensation, then it will not defeat his right to recover damages for any impairment of ability to earn wages at his said usual employment that he might otherwise be entitled to.”
Does it mean that if he had not occupied the situation as weighman he would have been entitled to recover damages for the wages he would have earned at his usual employment if he had not been injured, and therefore that the fact that he did earn compensation as weighman after he was injured would not defeat his right to recover damages for any impairment of his ability to earn wages as a miner during the time he was receiving such compensation?
He was entitled to damages for the impairment of his ability, either past or future, to earn wages at his usual employment during such time as he could not, in view *282 of his circumstances and. condition, reasonably secure other suitable employment, or for the excess of wages he would probably have earned at his usual employment if he had secured, or could secure, such other employment at less wages, but for such time as he did, or could, secure such other reasonable and suitable employment, at equal or greater compensation, he would not be entitled to recover damages on account of- the impairment of his ability to earn wages at his usual employment. Under such circumstances it would be evident that he could not suffer any financial loss during that time. The probable effect of such impairment on his future prospects might be an element for consideration, notwithstanding such other employment.
The language of the instruction is “will not defeat his right to recover damages for any impairment of ability to earn wages at his usual employment that he might otherwise have earned. ’ ’ He might otherwise—if he had not been injured, or if he had not secured another situation—have earned wages at his usual employment. His ability to earn such wages was impaired by the injury. He was entitled to recover any damage he sustained by reason of such impairment. If, however, he occupied another situation after the injury, in which he received compensation, this fact would defeat his right to recover damages for such impairment during that time to the extent, at least, of the amount of the compensation so received by appellee for such service. It was, therefore, not correct to say in substance and effect that notwithstanding he occupied such situation and received compensation therefor, such fact did not defeat his right to recover damages for any impairment of his ability to earn wages at his usual employment that he might have been entitled to recover if he had not secured compensation in such other situation. It was *283 misleading to say that such fact did not defeat the right to recover for any impairment. It did defeat the right to recover for such impairment to the extent that he was not damaged thereby. In other words his damages for any impairment of his ability to earn wages at his usual employment was lessened or defeated to the extent at least that he received compensation for services which he was able reasonably to perform in another situation. In our opinion the instruction was calculated, under the circumstances of this case, to confuse and mislead the jury.
It is next urged that the court erred in admitting the testimony of William McCloud, a witness in behalf of appellee, as to the condition of the north entry nine months before the injury occurred.
Prior to April 1, 1892, McCloud was in appellant’s employ as mine boss. He testified as to the unsafe and dangerous condition of the roof, when he was there, at the place where appellee was afterwards injured, and that he communicated to the president and secretary of appellant the fact that the roof was unsafe and should be repaired, and that they declined to have it repaired.
Other evidence tends to prove that appellant allowed the jroof to continue in this condition until appellee was injured by its falling on him as alleged in the complaint. The testimony of the witness was competent as tending to prove the unsafe condition of the roof, and knowledge thereof on the part of appellant. Under the circumstances of this case, it was neither immaterial nor too remote.
It is not necessary to consider any other questions discussed by counsel for appellant, as they are not likely to arise again- on another trial.
Appellee has assigned as cross-error the action of the *284 trial court in sustaining a demurrer to another paragraph of complaint filed by him.
Filed Dec. 18, 1894.
The only question discussed by counsel is whether, in an action for negligence growing out of the violation of provisions of section 12 of the act of March 2, 1891, it is necessary to allege want of contributory negligence on the part of the plaintiff.
The statute defines the duty of the master in relation to what he shall do with the view of securing a safe place for the miners in which to work, and makes the violation of the provisions of section 12, supra, negligence per se.
In order to state a good cause of action in such case as this the employe is required to allege in his complaint that the negligence on account of which he seeks to recover was the proximate cause of his injury, and also, in our opinion, that he was free from fault.
It is not necessary to discuss what acts would or would not constitute contributory negligence.
All we decide now is that the statute under consideration does not change the rule of pleading in this class of cases on the question of contributory negligence.
There was no error in sustaining the demurrer to this paragraph of the complaint.
The judgment is reversed, with instructions to grant appellant’s motion for a new trial.
Gavin, J., not present.